UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL HOUSE OF PANCAKES, LLC, a Delaware limited liability company, IHOP IP, LLC, a Delaware limited liability company, | Civil No. 12-3307 (WJM) |
| Plaintiffs, | OPINION |
| v. | HON. WILLIAM J. MARTINI |
| PARSIPPANY PANCAKE HOUSE INCORPORATED, a New Jersey corporation, | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court upon a motion for a preliminary injunction by Plaintiffs International House of Pancakes and IHOP IP, LLC (collectively, "IHOP") pursuant to Fed. R. Civ. P. 65. The parties appeared for oral argument on June 18 and 20, 2012. For the reasons set forth, IHOP's motion is **DENIED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The facts here are straightforward and not disputed. On December 30, 2005, IHOP and Defendant Parsippany Pancake House ("Pancake House") entered into a Franchise Agreement ("Agreement") which gave Pancake House the right to operate an IHOP franchise at 792 Route 46 West, Parsippany, New Jersey, and the right to use IHOP's trademarks at that location so long as the Agreement remained in effect. (Agreement, § 8.01.)

1

Joseph Cregg is the president and majority owner[1] of Pancake House. On April 30, 2012, Cregg pled guilty in New Jersey Superior Court to a charge of endangering the welfare of a child.[2] At argument, IHOP conceded that it presently does not have any facts indicating that the crime occurred at the Pancake House location, that IHOP received any negative publicity as a result of Cregg's plea, or that Pancake House's revenue has suffered. Nonetheless, on May 24, 2012, IHOP notified Pancake House - via a letter to Cregg - that it was terminating the Agreement, effective immediately, pursuant to section 12.02, which purportedly grants IHOP:

> "the right to terminate the Agreement immediately, without prior notice to Franchisee, upon the occurrence of . . . [the] Conviction of Franchisee, or any of its principal shareholders, of a felony or any other criminal misconduct which is relevant to the operation of the franchise." (Agreement, § 12.02(e).)

In spite of the termination letter, Pancake House continued to operate as an IHOP franchise. And on June 1, 2012, IHOP commenced this action, alleging that because the Agreement was validly terminated, Pancake House's unauthorized use of those marks constitutes trademark infringement, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c). On June 6, 2012, IHOP moved for a preliminary injunction barring Pancake House from further use of its marks.

---

[1] On June 20, 2012, the Honorable Deanne M. Wilson, Judge of the Superior Court of New Jersey ruled that Christopher Cregg, Joseph's brother, has a 50% equitable ownership interest in Pancake House. That ruling does not affect the Court's analysis.

[2] The parties do not dispute that as a result of his plea, Cregg will be incarcerated for a minimum of three years and will have to register as a sex offender.

In response to IHOP's motion, on June 8, 2012, the Court ordered the parties to appear for a hearing on June 18, 2012, and ordered that Pancake House be temporarily restrained from use of IHOP's marks pending the outcome of that hearing.  In spite of the Court's June 8 Order, Pancake House is still operating as an IHOP franchise and thus has continued to use IHOP's trademarks in the operation of its business.[3]

Pancake House asserts that it continued operation as an IHOP franchise is proper because IHOP's manner of terminating the Agreement violated New Jersey's Franchise Practices Act (the "FPA"), N.J.S.A. § 56:10-1, *et seq.*, and thus, no valid termination took place.  Under the FPA:

> "It [is] a violation of this act for any franchisor . . . to terminate . . . a franchise without having first given written notice setting forth all the reasons for such termination . . . to the franchisee at least 60 days in advance of such termination . . ., except . . . where the alleged grounds are the conviction of the franchisee in a court of competent jurisdiction of an indictable offense directly related to the business conducted pursuant to the franchise in which event the aforementioned termination . . . may be effective immediately upon the delivery and receipt of written notice of same at any time following the aforementioned conviction.  It shall be a violation of this act for a franchisor to terminate . . . a franchise without good cause."  N.J.S.A. § 56:10-5.

---

[3] IHOP has moved for the Court to hold Pancake House in contempt for failing to comply with the Court's June 8 order.  However, because the Court has now determined that IHOP's motion for injunctive relief is inappropriate at this time, that motion will be denied.

In response, IHOP claims that regardless of whether its termination of the Agreement is lawful under the FPA, the termination is still valid, and thus Pancake House is no longer licensed to use IHOP's trademarks. In support of that claim, IHOP relies heavily on the seminal case of *S & R Corp. v. Jiffy Lube*, 968 F.2d 371 (3d Cir. 1992), in which the Third Circuit ruled that a franchisor was entitled to have a former franchisee preliminary enjoined from further using the franchisor's trademarks in the operation of its business.

IHOP argues that *S & R* stands for the proposition that: "a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated. [And o]nce a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." *Id*. at. 375. IHOP's position then, is that even if its manner of terminating the Agreement violated the FPA, the termination is still valid and Pancake House should therefore be enjoined from further use of IHOP's marks.

IHOP's position, however, conveniently ignores that the *S & R* Court went on to state that a franchisor "will merit preliminary injunctive relief if it can adduce sufficient facts indicating that its termination of [a] franchise[] was proper." *Id*. Thus, it appears that *S & R* can also be interpreted to stand for the proposition that implicit in the "proper" termination of a franchise is the requirement that the termination must also be lawful under the FPA. *See, e.g. Ispahani v. Allied Domecq Retailing USA*, 320 N.J. Super. 494, 499-500 (App. Div. 1999).

The Court is unaware of any definitive case on the issue of whether a purported termination of a franchise agreement that violated the FPA was nonetheless sufficiently "proper" to enjoin a franchisee from use of the franchisor's trademarks.  However, the Court presently does not need to resolve this issue because in order for IHOP's termination to be valid, it must be lawful under the FPA, as set forth in section 12.04 of the Agreement, which states:

> "[i]f any law or regulation by any competent authority with jurisdiction over this Agreement shall limit [IHOP's] rights of termination or require a longer or different notice than that specified in this Article XII, same shall be deemed amended to conform with the minimum requirements of such law or regulation."

Although neither party has referenced section 12.04 of the Agreement, that section – in unequivocal terms – incorporates the stricter termination requirements of the FPA by reference.  And thus, IHOP's motion for a preliminary injunction seeking to enjoin Pancake House from the unauthorized use of its trademarks will only be granted if its termination of Pancake House is "proper" under the FPA.

## II.  ANALYSIS

When ruling on a motion for preliminary injunctive relief, this Court must consider four factors: (1) the likelihood that IHOP will prevail on the merits at a final hearing; (2) the extent to which IHOP is being irreparably harmed by the conduct complained of; (3) the extent to which Pancake House will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.  *S & R v. Jiffy Lube*, 968 F.2d

at 374 (citations omitted.)  For the Court to grant IHOP's motion, IHOP must produce sufficient evidence showing that all four factors favor issuing the preliminary injunction. *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

Thus in this case, and as a threshold matter, IHOP's motion for a preliminary injunction will only be granted if IHOP can demonstrate that is likely to ultimately succeed on its trademark infringement claims.  The parties do not dispute that until the May 24, 2012 termination letter, IHOP would not succeed on those claims because Pancake House's use of those marks was authorized.  Nor do the parties dispute that if the Agreement was improperly terminated, Pancake House remains licensed to use IHOP's marks.  And thus, IHOP's motion for a preliminary injunction seeking to enjoin Pancake House from the unauthorized use of its trademarks will only be granted if IHOP's termination of the Agreement is "proper", which in this case means that the termination comports with the minimum notice requirements of the FPA.  Otherwise, IHOP will be unable to demonstrate a likelihood that it will prevail on the merits at final hearing.

The Court notes that while there are a number of cases discussing whether certain criminal convictions provided "good cause" to eventually terminate a franchise, none discuss whether the immediate termination of a franchise based on that conviction was proper.  *See, e.g.*, *Authorized Foreign Car Specialists of Westfield, Inc. v. Jaguar Cars Inc.*, 79 F.3d 1137 (3d Cir. 1996) (conviction for "misprision of felony" constituted good cause to terminate the franchise agreement under FPA); *Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118 (D.N.J. 1991) (assault and weapons possession convictions for

6

an incident which occurred away from the franchise still "relevant to the franchise relationship"); *Portaluppi v. Shell Oil Co.*, 869 F.2d 245 (4th Cir. 1989) (conviction for possession of cocaine found at franchisee's residence, and which was reported in the newspaper, was an event "relevant to the franchise relationship.")

However, even if IHOP will have "good cause" to terminate the Agreement after sixty-days' notice on the basis of Cregg's conviction, that is not the issue presently before the Court. The issue, instead, is whether Cregg's conviction is "directly related to the business conducted pursuant to the franchise." That is the only basis under the FPA which justifies immediate termination of the Agreement. On the record before the Court, there is nothing to suggest that the crime occurred at Pancake House, that IHOP received any adverse publicity, that Pancake House or other IHOPs have become less profitable as a result of the conviction, or any other direct factual nexus between Cregg's conviction and the business conducted pursuant to the franchise. And while there is scant case law interpreting "directly related," IHOP appears to concede that this is at the very best, a close call.

IHOP nonetheless argues that because Cregg's conviction has the potential to damage the IHOP brand, it is "directly related." The Court recognizes that IHOP wishes to protect the good-will associated with its brand. However, the Court is unwilling to accept that potential damage to a franchisor's brand, standing alone, is sufficient to satisfy the "directly related" standard of the FPA. *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1185 (2d Cir. 1995) *cert. den.* 517 U.S. 1119 (1996) (compared to other states with similar FPAs, New Jersey takes a narrow view of the circumstances that may justify

termination of a franchisee).  And because IHOP has failed to provide sufficient evidence showing that its termination of the Agreement was lawful under the FPA, IHOP has failed to show that it is likely to succeed on its claims that Pancake House's present use of IHOP's marks is unauthorized, because as long as the Agreement remains valid, Pancake House has a license to use those marks.

### III.   CONCLUSION

For the foregoing reasons, IHOP's motion for a preliminary injunction is **DENIED** and those portions of the Court's June 8, 2012 Order temporarily restraining Pancake House are **VACATED**.  In light of those determinations, IHOP's motion for sanctions is **DENIED** as moot.


      <u>/s/    William J. Martini</u>
      **William J. Martini, U.S.D.J.**


**Dated:  June 27, 2012**