UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INTERNATIONAL HOUSE OF PANCAKES, LLC**, a Delaware limited liability company, **IHOP IP, LLC**, a Delaware limited liability company,<br><br>  Plaintiffs,<br><br>  v.<br><br>**PARSIPPANY PANCAKE HOUSE INCORPORATED**, a New Jersey corporation,<br><br>  Defendant. | Civ. No. 12-3307 (WJM)<br><br>OPINION |

This matter comes before the Court on Plaintiffs International House of Pancakes, LLC and IHOP IP, LLC's ("IHOP's") motion to preliminarily enjoin[1] Defendant Parsippany Pancake House Incorporated ("Pancake House") from using the "IHOP" brand name or any IHOP related trademarks, service marks, and trade names ("Marks") pursuant to Rule 65 of the Federal Rules of Civil Procedure. Pancake House does not oppose the motion. For the reasons that follow, IHOP's motion will be **GRANTED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2005, IHOP and Pancake House – through its president, Joseph Cregg – entered into a Franchise Agreement ("Agreement") which gave Pancake

---

[1] ECF No. 32.

House the right to operate an IHOP franchise at 792 Route 46 West, Parsippany, New Jersey, and the right to use IHOP's trademarks at that location so long as the Agreement remained in effect (Agreement, § 8.01).  The Agreement also set forth the respective rights and obligations of IHOP and Pancake House.  For example, Pancake House and Cregg agreed that Cregg would participate in the day-to-day operation of the franchise, comply with applicable laws, and adhere to certain business and ethical practices, as set forth in sections 10.5, 10.8 and 10.10.

The Agreement further set forth the specific grounds under which IHOP could terminate that Agreement, and thereby revoke Pancake House's right to use IHOP's Marks.  Notably, the Agreement stated that IHOP could:

> "terminate the Agreement immediately, without prior notice to Franchisee, upon the occurrence of  . . .
> (e) [the] Conviction of Franchisee, or any of its principal shareholders, of a felony or any other criminal misconduct which is relevant to the operation of the franchise [or[
> (f) If in Franchisor's reasonable judgment, Franchisee's continued operation of the franchise will result in an imminent danger to public health or safety."

(Agreement, § 12.02.)

However, as set forth in section 12.04, any termination of the Agreement by IHOP would also have to comply with the New Jersey Franchise Practices Act ("FPA"), N.J.S.A. § 56:10-1, *et seq*.  And under the FPA:

> "[a] franchisor [may not] . . . terminate . . . a franchise without having first given written notice setting forth all the reasons for such termination . . . to the franchisee at least 60 days in advance of such termination . . . , except . . . . where the alleged grounds are the conviction of the franchisee . . . of an

2

> indictable offense directly related to the business conducted pursuant to the franchise in which event the aforementioned termination . . . may be effective immediately upon [written notice of termination]."

N.J.S.A. § 56:10-5.

The FPA goes on to state:

> "It shall be a violation of this act for a franchisor to terminate . . . a franchise without good cause. For the purposes of this act, good cause for terminating, cancelling, or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise."

*Id.*

**A.      IHOP's Previous Motion for a Preliminary Injunction**

On April 30, 2012, Joseph Cregg pled guilty in New Jersey Superior Court to a felony charge of endangering the welfare of a child. On May 24, 2012, IHOP notified Pancake House – via a Notice of Termination letter to Cregg – that it was terminating the Agreement, effective immediately, pursuant to section 12.02. In spite of the Notice of Termination, Pancake House continued to operate as an IHOP franchise. And on June 1, 2012, IHOP commenced this action, alleging that because the Agreement was validly terminated, Pancake House's continued use of IHOP's Marks was unauthorized and therefore constituted trademark infringement, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c).

On June 6, 2012, IHOP moved for a preliminary injunction barring Pancake House from further use of its Marks. After conducting oral argument on June 18 and 20, 2012, the Court denied that motion on June 27, 2012. In arriving at that decision, the

Court noted the following:

> "When ruling on a motion for preliminary injunctive relief, this Court must consider four factors: (1) the likelihood that IHOP will prevail on the merits at a final hearing; (2) the extent to which IHOP is being irreparably harmed by the conduct complained of; (3) the extent to which Pancake House will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *S & R v. Jiffy Lube*, 968 F.2d [371,] at 374 [(3d Cir. 1992)] (citations omitted). For the Court to grant IHOP's motion, IHOP must produce sufficient evidence showing that all four factors favor issuing the preliminary injunction. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).
>
> Thus in this case, and as a threshold matter, IHOP's motion for a preliminary injunction will only be granted if IHOP can demonstrate that is likely to ultimately succeed on its trademark infringement claims. The parties do not dispute that until the May 24, 2012 termination letter, IHOP would not succeed on those claims because Pancake House's use of those marks was authorized. Nor do the parties dispute that if the Agreement was improperly terminated, Pancake House remains licensed to use IHOP's marks. And thus, IHOP's motion for a preliminary injunction seeking to enjoin Pancake House from the unauthorized use of its trademarks will only be granted if IHOP's termination of the Agreement is "proper", which in this case means that the termination comports with the minimum notice requirements of the FPA. Otherwise, IHOP will be unable to demonstrate a likelihood that it will prevail on the merits at final hearing.
>
> The Court notes that while there are a number of cases discussing whether certain criminal convictions provided "good cause" to eventually terminate a franchise, none discuss whether the immediate termination of a franchise based on that conviction was proper. *See, e.g., Authorized Foreign Car Specialists of Westfield, Inc. v. Jaguar Cars Inc.*, 79 F.3d 1137 (3d Cir. 1996) (conviction for "misprision of felony" constituted good cause to terminate the franchise agreement under FPA); *Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118 (D.N.J. 1991) (assault and weapons possession convictions for an incident which occurred away from the franchise still "relevant to the franchise relationship"); *Portaluppi v. Shell Oil Co.*, 869 F.2d 245 (4th Cir. 1989) (conviction for possession of cocaine found at franchisee's residence, and which was reported in the newspaper, was an event "relevant to the franchise relationship.")

> However, even if IHOP will have "good cause" to terminate the Agreement after sixty-days' notice on the basis of Cregg's conviction, that is not the issue presently before the Court. The issue, instead, is whether Cregg's conviction is "directly related to the business conducted pursuant to the franchise." That is the only basis under the FPA which justifies immediate termination of the Agreement. On the record before the Court, there is nothing to suggest that the crime occurred at Pancake House, that IHOP received any adverse publicity, that Pancake House or other IHOPs have become less profitable as a result of the conviction, or any other direct factual nexus between Cregg's conviction and the business conducted pursuant to the franchise. And while there is scant case law interpreting "directly related," IHOP appears to concede that this is at the very best, a close call.
>
> IHOP nonetheless argues that because Cregg's conviction has the potential to damage the IHOP brand, it is "directly related." The Court recognizes that IHOP wishes to protect the good-will associated with its brand. However, the Court is unwilling to accept that potential damage to a franchisor's brand, standing alone, is sufficient to satisfy the "directly related" standard of the FPA. *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1185 (2d Cir. 1995) cert. den. 517 U.S. 1119 (1996) (compared to other states with similar FPAs, New Jersey takes a narrow view of the circumstances that may justify termination of a franchisee). And because IHOP has failed to provide sufficient evidence showing that its termination of the Agreement was lawful under the FPA, IHOP has failed to show that it is likely to succeed on its claims that Pancake House's present use of IHOP's marks is unauthorized, because as long as the Agreement remains valid, Pancake House has a license to use those marks."

(June 27, 2012 Op., ECF No. 22.)

**II.        IHOP's Present Motion for a Preliminary Injunction**

Shortly after the Court denied IHOP's first motion for injunctive relief, IHOP served Pancake House with an Amended Notice of Termination dated June 28, 2012, advising Pancake House that it would be terminating the Agreement, effective July 24, 2012, for substantially the same reasons IHOP gave in its May 24, 2012 Notice of

Termination, including IHOP's determination that Cregg's "conduct constitutes an incurable breach of [Pancake House's] obligations under the Agreement because, among other reasons, [Cregg's] admitted conduct and plea violate section 12.02 (e) and (f) of the Agreement." (Declar. of John Merkin, Ex. E, ECF No. 32.)

In spite of IHOP's Amended Notice of Termination, it appears that Pancake House has continued to operate as an IHOP franchise. And on September 11, 2012 – well after the July 24, 2012 termination date set forth in the Amended Notice – IHOP filed its second motion to preliminarily enjoin Pancake House from further use of its Marks. On September 13, 2012, the Court held oral argument on IHOP's request for temporary restraints ahead of any hearing on IHOP's request for a preliminary injunction. Counsel for Pancake House declined to appear. At the hearing, IHOP explained its current position. Specifically, that because IHOP provided Pancake House with sixty-days notice that it would terminate the Agreement effective July 24, 2012, and because that termination was based on Pancake House's failure to substantially comply with the terms of the Franchise Agreement, IHOP's manner of termination of the Agreement comports with the FPA. Thus, IHOP's position is that because it has now properly terminated the Agreement, Pancake House no longer has the right to use IHOP's Marks. And accordingly, IHOP is now entitled to have Pancake House preliminarily enjoined from further use of the IHOP Marks in the operation of its business. *S & R Corp. v. Jiffy Lube*, 968 F.2d 371 (3d Cir. 1992).

After that hearing, the Court granted IHOP's request for temporary

restraints and ordered Pancake House to show cause by September 17, 2012 as to why IHOP's motion for a preliminary injunction should not be granted. Pancake House has not filed any substantive response to the Court's Order, nor has it filed opposition to IHOP's motion. IHOP has informed the Court that it will therefore rely on its papers and the arguments it advanced at the September 13 hearing.

**III.        Application**

The facts in this case remain largely unchanged from June 27, 2012. It remains true that as a threshold matter, IHOP's motion for a preliminary injunction will only be granted if IHOP can demonstrate that it is likely to ultimately succeed on its trademark infringement claims. IHOP will only be able to do this if it can show that Pancake House's present use of those Marks is unauthorized. Pancake House's use of the Marks will only be unauthorized if IHOP properly terminated the Agreement, which in this case requires that IHOP's termination of that Agreement comport with the FPA.

The only substantial difference in the facts before the Court since it denied IHOP's first motion for a preliminary injunction on June 27, 2012, is that IHOP has now given Pancake House sixty-days notice that it would be terminating the parties' Franchise Agreement, effective as of July 24, 2012. And because IHOP has now undisputely met the FPA's notice requirement, the salient issue before the Court is whether IHOP is likely to prevail on its claim that it had "good cause" to terminate the Agreement under the FPA, which is defined as a "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." N.J.S.A. § 56:10-5.

Presently, the Court finds that IHOP is likely to prevail on the merits of that claim. IHOP is a family-friendly dining establishment with an interest in protecting that image. Cregg, the president of one of its franchises, admitted to sexually assaulting a minor and as a result, pled guilty to the charge of endangering the welfare of a child and must register as a sex offender. Moreover, under the terms of that plea, Cregg must go to prison for at least three years. It is undisputed that once Cregg begins serving his prison term, he will be unable to actively participate in Pancake House's day-to-day operations, although he is obligated to do so under the terms of the Agreement. On these facts, the Court finds that IHOP has demonstrated that it is likely to prevail on its claim that Cregg's conviction "is relevant to the operation of the franchise" and that IHOP therefore had the right to terminate the Agreement pursuant to section 12.02(e).

Moreover, and as discussed in the Court's June 27 Opinion, courts have found less severe crimes which support good cause for termination under the FPA. Tellingly, in spite of already once having prevailed when contesting the validity of IHOP's termination of the Agreement, and despite having had well-over sixty days to dispute that IHOP's June 28, 2012 Amended Notice of Termination comported with the FPA's "good cause" provision, Pancake House has declined to challenge the validity of that Notice. On these facts, the Court further finds that IHOP is likely to prevail on its claim that it had "good cause" to terminate the Agreement under the FPA based on the "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise," and thus, that it properly terminated the Agreement as of July 24,

2012.

And because it now appears that IHOP is likely to prevail on its claim that its termination of the Agreement was properly effected, it therefore follows that IHOP is likely to prevail on its claim that Pancake House's continued use of the IHOP Marks is unauthorized and constitutes trademark infringement, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c).  Accordingly, IHOP has now demonstrated that it is entitled to preliminary relief enjoining Pancake House from further use of its Marks.  *S & R Corp. V. Jiffy Lube Intern., Inc.*, 968 F.2d 317 (3d. Cir. 1992) ("Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act.")

**IV.**     **Conclusion**

For the foregoing reasons, IHOP's motion for a preliminary injunction will be **GRANTED**.

s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Dated: September 25, 2012**